IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CARL DANIEL GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:13-CV-14 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Carl Daniel Gray ("Gray") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Gray alleges that the Administrative Law Judge ("ALJ") erred by not giving the opinions of his treating physicians greater weight and by improperly discrediting his testimony.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the ALJ's findings are supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Gray's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 16.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Gray failed to demonstrate that he was disabled under the Act.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[3] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## CLAIM HISTORY

Gray filed for SSI and DIB on April 10, 2007, claiming that his disability began on July 30, 2006. R. 14, 91, 98. The state agency denied the application at the initial and reconsideration levels of administrative review. R. 95,114–19, 126–32. On November 20, 2008, ALJ Thomas King held a hearing to consider Gray's disability claim. Gray was represented by an attorney at the hearing, which included testimony from Gray, his mother, Carol Gray, and vocational expert Andrew V. Beale. R. 54–58. On December 31, 2008, the ALJ entered his decision denying Gray's claims. R. 95–110. The ALJ found that Gray suffered from severe impairments of degenerative joint disease in the back, chronic obstructive pulmonary disease ("COPD"), plantar fasciitis, and occasional swelling of the hands and feet with temperature sensitivity. R. 100. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 103. The ALJ further found that Gray had the RFC to perform simple, unskilled work, but it should be restricted to indoor, daytime work without exposure to temperature extremes, fumes, odors, dusts, gasses, poor ventilation, other respiratory irritants, machinery, and height hazards. R. 104. The ALJ determined that Gray could not return to his past relevant work as a crane operator (R. 108) but that Gray could work at jobs that exist in significant numbers in the national economy, namely, cleaner and laundry sorter. R. 109. Thus, the ALJ concluded that Gray was not disabled.

3

Gray sought review of the ALJ's decision with the Appeals Council, and on July 10, 2010, the Appeals Council remanded the case to the ALJ for further development and clarification. R. 112.[4]  On May 9, 2011, ALJ Thomas R. King held a second hearing to consider Gray's disability claim. R. 11–22.  Gray was once again represented by an attorney at the hearing, which included testimony from Gray's girlfriend, Brenda Sneed, and vocational expert Robert W. Jackson. R. 61–90.  On June 30, 2011, the ALJ entered his decision denying Gray's claims. R. 11–22.  The ALJ found that Gray suffered from the severe impairments of COPD, and arthritis of the spine and knee. R. 17.  The ALJ found that Gray retained the RFC to perform sedentary work, but he should avoid concentrated exposure to dust, fumes, and extreme temperatures; work indoors where the climate is controlled; and have a flexible stand/sit option. R. 19.  The ALJ determined that Gray could not return to his past relevant work as a crane operator (R. 20–21), but that Gray could work at jobs that exist in significant numbers in the national economy, such as a general production worker and material handler. R. 21.  Thus, the ALJ concluded that he was not disabled. R. 22.  On December 17, 2012, the Appeals Council denied Gray's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Gray raises two limited issues in this case.  First, Gray challenges whether the ALJ properly relied upon the consultative examination of William Humphries, M.D., when developing his RFC, rather than giving controlling weight to the opinions of treating physicians Eugene Amstutz, M.D. and Virginia Blanks, M.D.  Second, Gray argues that the ALJ erred by

---

[4] Specifically, the Appeals Council directed the ALJ to: (1) reconcile Gray's RFC to account for his mental limitation with specific rationale; (2) give further consideration to Gray's maximum RFC with specific references in support of the limitations; and, (3) obtain supplemental evidence from a vocational expert regarding Gray's limitations as established by the record as a whole, and account for any discrepancies between the Dictionary of Occupational Titles ("DOT") and Social Security Ruling ("SSR") 00-4p. R. 112–13.

4

failing to provide specific reasons to support his credibility analysis, and by failing to consider and weigh the administrative hearing testimony of Gray's mother and girlfriend in his decision.

**Treating Physician**

Gray is a younger individual under the Commissioner's regulations, and previously worked as an iron worker and crane operator. R. 21–22. Gray was exposed to chemical hazards in 1984, and as a result, most of his left lung was removed in 1987, causing him to be sensitive to fumes and extreme temperatures. R. 19, 67. Gray was also injured in 1999, when he was crushed by more than four thousand pounds in a work-related accident, injuring his left knee and causing four discs to rupture in his back. R. 68. Gray continued to work after these injuries as a crane operator until 2006, when he was unable to find employment. R. 241.

Gray alleges that he became disabled as of July 30, 2006, due to his limited lung capacity, back problems and swelling in his hands and feet. R. 66–70, 241. During the relevant five year time period of this case (2006–2011), Gray received limited medical treatment, visiting a doctor only four times. Gray also underwent a consultative exam by state agency doctor William Humphries, M.D., in 2007, and a psychological examination by consultative physician Jeffrey Luckett, Ph.D., in 2010. Gray argues that the ALJ improperly relied upon Dr. Humphries' consultative examination finding him capable of light work when developing his RFC, rather than relying upon the opinions of treating physicians Eugene Amstutz, M.D. (in 2008) and Virginia Blanks, M.D. (in 2011), both of whom found Gray incapable of sedentary work.

On September 5, 2007, Dr. Humphries physically examined Gray and diagnosed him with dyspnea, mild degenerative joint disease in his hands and feet, chronic lumbar strain and probable plantar fasciitis. R. 315. Dr. Humphries found that Gray had a slightly reduced range of

5

motion in his neck and back, and diffuse tenderness to palpation of the paraspinous muscles of the lower thoracic and lumbar regions. A straight leg raise test elicited discomfort in both of Gray's knees at 80 degrees in the sitting position. Gray had a full range of motion in his upper extremities, with mild synovial thickening in some joints of the fingers in both hands, and in the toes of both feet. Gray's hands and wrists were slightly tender to palpation, and he had a slightly reduced range of motion in both hips, and a normal range of motion in both knees. Gray also had a nodule in the plantar arch of each foot. Gray had full grip strength, adequate fine manipulations, a mildly antalgic gait on the right side, and normal strength in his extremities. R. 314–15. Based upon his exam, Dr. Humphries found Gray capable of light work with occasional climbing, kneeling and crawling, and no exposure to heights, hazards and fumes. R. 316.

On March 18, 2008, Gray sought treatment with Todd Dehli, M.D., at Family Village Physicians for pain in his low back, hands and feet. R. 379. Dr. Dehli noted that Gray's physical exam was normal, aside from decreased dorsiflexion against resistance, and tender palpation over the lumbosacral area, exacerbated by rotation movements. R. 379. Dr. Dehli diagnosed degenerative joint disease of the spine, COPD and Raynaud's phenomenon.[5] R. 379.

Seven months later, Gray returned to Family Village Physicians and saw Kathryn Humphreys, M.D., complaining of arthritis. Dr. Humphreys' physical exam of Gray was normal, aside from tender and slightly swollen knuckles. R. 378. Dr. Humphreys diagnosed osteoarthritis and possible Raynaud's syndrome, and noted "[patient] does not appear employable-papers filled out-see copy in chart." R. 378. Dr. Humphreys was presumably referring to a form opinion regarding Gray's functional capacity completed that same day by Dr.

---

[5] Raynaud's phenomenon is a condition in which cold temperatures or strong emotions cause blood vessel spasms, blocking blood flow to the fingers, toes, ears and nose.
http://www.nlm.nih.gov/medlineplus/ency/article/000412.htm.

6

Amstutz of Family Village Physicians. R. 375–76.  On the form, Dr. Amstutz noted degenerative changes in Gray's spine, Gray's complaint of chronic low back pain, and that his hands and feet become swollen and painful in cold, damp and humid weather.  R. 375.  Dr. Amstutz found that Gray could sit for two to three hours in an eight hour workday, stand for less than one hour in an eight hour workday, could lift ten pounds frequently and twenty pounds occasionally, and that pain would constantly interfere with his attention and concentration.  Dr. Amstutz also noted that Gray does not do well in crowds, and that he would miss more than four days of work per month as a result of his impairments.  R. 376.  There is no indication in the record that Dr. Amstutz performed a physical evaluation of Gray prior to completing the functional capacity report.

On June 11, 2009, Gray returned to Family Village Physicians complaining of left leg pain after a fall.  R. 444.  Dr. Dehli examined Gray and noted muscle pain and weakness in his left lower leg, numbness in his left foot, moderate tenderness in his low back and over the spinal column, and tender nodules in the arches of Gray's feet.  R. 444–45.  The treatment note specifically lists as *not* present: back pain, joint pain, joint redness, joint stiffness, joint swelling and swelling of extremities.  R. 444.  The treatment note also states "[patient] does not appear employable—papers filled out—see copy in chart."  R. 445.

On October 26, 2010, Jeffery B. Luckett, Ph.D., performed a mental status evaluation, intellectual assessment and psychological evaluation of Gray.  R. 424–33.  Dr. Luckett concluded that Gray's intellectual capability was in the low to average range, and noted that Gray's performance on the psychological evaluation was likely exaggerated.  Dr. Luckett found that, from a psychological standpoint, Gray was capable of working an eight hour day and forty hour workweek, could perform simple and repetitive tasks without difficulty, is able to work with the

7

public, peers and supervisors appropriately, and would not require specialized supervision. R. 432–33.

On March 31, 2011, Gray returned to Family Village Physicians complaining of osteoarthritis in his back, hands and knees. R. 443. Virginia Blanks, M.D., noted tenderness in Gray's lumbar spine and over the lateral longitudinal arches of both feet, but no other positive examination findings. R. 445. Approximately two months after Dr. Blanks examined Gray, she completed a questionnaire with regard to his functional capacity. Dr. Blanks indicated that as a result of chronic back pain and side effects of medication, Gray could sit for two to three hours in an eight hour workday, stand for less than one hour in an eight hour workday, lift twenty pounds occasionally and less than ten pounds frequently, could never twist, stoop, crouch/squat, climb ladders or stairs, and would miss more than four days of work per month. R. 450–51.

When developing Gray's RFC, the ALJ considered the record as a whole, including the opinions of Drs. William Humphries, Luckett, Amstutz and Blanks. The ALJ gave no significant weight to the opinions of Drs. Amstutz and Blanks that Gray is incapable of even sedentary work, noting the lack of medical evidence to support their opinions. R. 20. The ALJ gave weight to Dr. William Humphries' opinion that Gray is capable of light work, but reduced Gray's RFC to sedentary work in consideration of his subjective complaints of pain. R. 20. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give no significant weight to the opinions of Drs. Amstutz and Blanks that Gray is incapable of even sedentary work.

The social security regulations require that the opinions of a treating physician receive controlling weight if they are supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record.

8

Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); SSR 96-2p.

In determining whether to give the treating physician's opinion controlling weight, the ALJ must consider the evidence in support of the opinion and to determine the opinion's consistency with the whole record. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ considers whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ is required to give specific reasons supported by the record if he gives the treating physician's opinion less than controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p.

Based upon the evidence set forth above, the ALJ appropriately refrained from giving weight to the opinions of Drs. Amstutz and Blanks. Although Gray labels Drs. Amstutz and Blanks as treating physicians, there is no indication in the record that Dr. Amstutz examined Gray, and Dr. Blanks examined Gray on only one occasion, two months prior to the date of her opinion.[6]

---

[6] Gray argues that the ALJ erroneously relied upon the gaps in his medical treatment in the decision denying disability. Gray asserts that the gaps in his medical treatment are explained by his lack of insurance and limited income, and thus cannot be held against him. Pl. Br. at p. 12. Although the ALJ noted the two-year gap in Gray's medical treatment between 2009 and 2011, there is no indication in the decision that the ALJ relied upon this information to Gray's detriment when developing his RFC. Rather, as noted more fully above, the ALJ considered

9

Furthermore, the treatment notes from Gray's four visits with Family Village Physicians during the relevant period do not support the severe limitations set forth in Drs. Amstutz and Blanks' opinions. Gray's treatment notes reflect benign physical findings, with no major functional limitations. Gray consistently exhibited tenderness in his low back and spinal column and painful nodules in the arches of his feet. Gray also had swollen, tender knuckles on one occasion. However, the treatment notes also consistently note Gray's normal gait, normal upper and lower extremities, and normal range of motion, intact sensation and strength. R. 378–79, 443–46. These findings do not correlate with Drs. Amstutz and Blanks' opinion that Gray cannot sit for more than two hours in a work day, cannot stand for more than one hour in a workday and would miss more than four days of work per month.

The opinion of Drs. Amstutz and Blanks that Gray's pain would constantly interfere with his attention and concentration is also contradicted by the record. In October 2010, Dr. Luckett found that Gray exhibited no pain behaviors and that pain did not interfere with his ability to complete tasks. R. 428–433. Gray also indicated on his disability application that he had no difficulty completing tasks. R. 259. Further, there is no reference in the treatment notes from Family Village Physicians that Gray's pain was so severe that he was unable to maintain attention and concentration.

Given the length and infrequency of Drs. Amstutz and Blanks' treatment of Gray, and the inconsistency of their opinions with the record as a whole, I find that substantial evidence supports the ALJ's conclusion that their opinions are not entitled to weight.

Gray also argues that it was improper for the ALJ to rely upon Dr. Humphries' 2007 evaluation of Gray, because it did not adequately reflect the progressive deterioration of Gray's

---

the record as a whole, and based his RFC determination on the medical evidence and Gray's subjective statements of pain.

medical condition through 2011. However, the medical evidence does not support Gray's assertion that his medical condition deteriorated such that Dr. Humphries' opinion was no longer accurate. As noted above, Gray's physical exams do not show evidence of a progressive condition that worsened significantly between 2007 and 2011. Rather, they show that Gray had complaints of pain in his low back, hands and feet, with limited physical findings throughout the relevant time period. R. 314, 377–80, 445–47. Gray's physical exams performed by Drs. Dehli, Humphreys and Blanks contained findings similar to, if not less restrictive than, those found by Dr. Humphries. Id. Notably, on June 11, 2009, Dr. Dehli noted that back pain was "not present." R. 444.

Further, the ALJ did not blindly adopt and the opinion of Dr. William Humphries following his consultative examination, but considered the record as a whole, including Gray's subjective complaints of pain. The ALJ accounted for Gray's pain by limiting him to an RFC of sedentary work with a sit/stand option, which is significantly more restrictive than Dr. Humphries' opinion. Accordingly, substantial evidence supports the ALJ's decision to give weight to the opinion of Dr. Humphries when forming Gray's RFC.[7]

**Credibility**

Gray argues that the ALJ erred by failing to provide specific references in the record to support his credibility analysis, improperly relying upon Gray's prior felonies to discredit his testimony, and by failing to consider the administrative hearing testimony of Gray's mother and girlfriend when deciding Gray's claim.

---

[7] During the oral argument hearing with this Court, Gray's counsel indicated that his mental issues were not the focus of the case. With regard to Gray's mental condition, although the ALJ noted that Gray abandoned his mental impairment claim at the administrative hearing, the ALJ sent Gray for a consultative mental examination with Dr. Luckett, and thoroughly discussed those results in his decision. R. 17. The ALJ considered Gray's mental limitations throughout his opinion, and the findings of Gray's mental examinations are relatively benign. Thus, substantial evidence supports the ALJ's conclusions with regard to Gray's alleged mental impairments as well.

11

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

In this case, the ALJ found that Gray's statements concerning the intensity, persistence and limiting effects of his allegedly disabling symptoms were not fully credible. In his decision, the ALJ thoroughly considered the evidence of record, and provided sufficient support for his determination of Gray's credibility. R. 17–20. Contrary to Gray's assertion, the ALJ not only considered Gray's prior felonies, but also Dr. Luckett's finding that Gray likely exaggerated and magnified his performance on the personality assessment inventory. R. 18. The ALJ also considered Gray's statement to Dr. Luckett that he often hunted, fished and went out on his boat with friends. R. 427. Although Gray later testified at the second administrative hearing that he stopped performing those activities in 2010 (R. 73–74), he was engaging in such activities for at least four years, while at the same time claiming that he was disabled from all substantial gainful activity. Further, the ALJ did not entirely dismiss Gray's subjective testimony with regard to his functional limitations, but rather considered Gray's complaints of pain and developed a more limited RFC than that recommended by Dr. Humphries. R. 20.

With regard to the administrative hearing testimony of Gray's mother and girlfriend, the Fourth Circuit has held that subjective testimony by lay witnesses may be discounted when there is contrary evidence within the record and there is sufficient objective medical evidence that allows the fact finder to determine disability. Laws v. Celebrezze, 368 F.2d 640, 644 (4th Cir. 1966) (citing Underwood v. Ribicoff, 298 F.2d 850, 852 (4th Cir. 1962)). Here, for the reasons

already stated, the medical evidence contained in the record is sufficient to support the ALJ's disability determination. Thus, the testimony and evidence submitted by the lay witnesses is not necessary to the ALJ's decision. See Hunsaker v. Barnhart, No. Civ. A. 205CV00027, 2005 WL 3271485, at *10 (W.D. Va. Dec. 2, 2005). Moreover, "[A]n ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record." Cordell v. Barnhart, 1:05CV281, 2006 WL 5435534, at *3 (W.D.N.C. May 19, 2006) (quoting Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)).

Several courts have held that listing specific reasons for dismissing the testimony of a lay witness is not necessary when the lay witness's testimony merely repeats the claimant's allegations which were discredited, and/or the lay witness's testimony is contradicted by the same objective evidence discrediting the claimant's testimony. See, e.g., Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir. 1995)(failure to list reasons for the rejection of lay testimony is excusable where lay testimony was discredited by the same evidence discrediting the claimant's own testimony); Carlson v. Shalala, 999 F.2d 180 (7th Cir. 1993) (rejection of lay testimony, without articulation of reason, was upheld because that testimony merely corroborated claimant's testimony which the ALJ explicitly discredited); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ properly discounted the lay testimony of a former employee of the claimant where the lay testimony conflicted with the medical evidence or record); Goad v. Astrue, CIV. A. 1:06-00870, 2008 WL 644881, at *2 (S.D.W. Va. Mar. 7, 2008) (ALJ not required to give specific reasons to discredit lay testimony that is corroborative of plaintiff's testimony which the ALJ properly discredited); Cordell v. Barnhart, 1:05CV281, 2006 WL 5435534, at *3–4 (W.D.N.C. May 19, 2006) (ALJ's failure to discuss testimony of lay witnesses was not error

where testimony was identical to the testimony of plaintiff, and substantial evidence supported the ALJ's conclusion).

In this case, the testimony of Gray's mother and girlfriend related to his daily activities and alleged functional limitations, was cumulative of Gray's testimony at the administrative hearing and statements in his applications, and was contradicted by the objective medical evidence in the record. The ALJ considered Gray's subjective complaints of pain, along with the medical evidence in the record, and accounted for those complaints in developing his RFC. As the Court in Cordell stated, "the issue is not whether the ALJ failed to mention a particular piece of evidence in her decision, but whether the ALJ's final decision denying benefits is supported by substantial evidence contained in the Administrative Record." 2006 WL 5435534 at *4. Accordingly, I find that the ALJ did not err by failing to expressly discuss the testimony and written evidence of the lay witnesses in making his disability determination.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** plaintiff's motion for summary judgment, **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as

14

well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

        Enter: August 5, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge