# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| CARL D. GRAY,<br>                      *Plaintiff*,<br><br>v.<br><br>CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,<br>                      *Defendant*. | CASE NO. 6:13–cv–00014<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 12 and 16), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 20, hereinafter "R&R"), and Plaintiff's Objections to the R&R (docket no. 21). Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed his Objections, obligating the Court to undertake a *de novo* review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt the Magistrate Judge's R&R in full.

### I. BACKGROUND

On April 10, 2007, Plaintiff Carl Gray ("Plaintiff" or "Gray") protectively filed an

1

application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DBI") payments under the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, 1381–1383f. To receive SSI benefits, Plaintiff must show that his disability began on or before the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501. To receive DBI benefits, Plaintiff must show his disability began before the date he was or will be last insured, which is December 31, 2011, and that the disability existed for twelve continuous months. 42 U.S.C. §§ 423(a)(1)(4), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

Plaintiff was born on June 23, 1962, and he was forty-four years old at the time he filed his April 2007 applications. He claimed his disability began on July 30, 2006, as a result of both mental and physical impairments. Plaintiff's physical impairments include limited lung capacity, back problems,[1] and swelling in his hands and feet. He alleges that his back pain is constant, affects his ability to sleep for more than three or four hours at a time, and becomes progressively worse when performing job-related activities. Plaintiff's mental impairments consist of dyslexia and anxiety, and his anxiety is allegedly so debilitating that he is unable to work with others. Plaintiff most recently worked as a crane operator, but in July of 2006, he stopped working due to a lack of employment opportunities in his hometown.

### A. The ALJ Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review, and on November 20, 2008, Administrative Law Judge ("ALJ") Thomas King held a hearing to consider Plaintiff's disability claim. Plaintiff was represented by counsel

---

[1] In the first hearing before the ALJ, Plaintiff testified that he has back and lung issues as a result of two workplace accidents. First, in 1984, exposure to chlorine in a workplace accident caused one of his lungs to collapse, leaving him prone to pneumonia and bronchitis. Second, in 1999, over "4,600 pounds rolled over him and pinned him against a wall" while he was working as an ironworker, causing him to suffer four ruptured discs in his lower back.

2

at the hearing, which included testimony from Gray, his mother, Carol Gray, and vocational expert Andrew V. Beale. Plaintiff testified that, due to his anxiety and back problems, he cannot interact with others and is unable to sit or stand for any significant period of time. On December 31, 2008, the ALJ entered his decision denying Gray's claim.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In this process, the Commissioner asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) the claimant is able to perform her past relevant work; and (5) the claimant can perform other specific types of work. *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). At Step 5, however, the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Gray's anxiety was "non-severe" and thus failed under step two of the disability inquiry. With respect to Gray's physical impairments, the ALJ found that Gray suffered from severe impairments of degenerative joint disease in the back, chronic obstructive pulmonary disease ("COPD"), plantar fasciitis, and occasional swelling of the hands and feet

3

with temperature sensitivity. At step three of the analysis, however, the ALJ found that these impairments did not meet or medically equal a listed impairment. The ALJ further found that Gray has the residual functional capacity ("RFC") to perform simple, unskilled work, but that such work should be restricted to indoor, daytime work with no exposure to temperature extremes, fumes, odors, dusts, gasses, poor ventilation, other respiratory irritants, and height hazards. Finally, the ALJ found that Gray is unable to return to his job as a crane operator and therefore cannot perform any past relevant work, though Gray could find alternative work as a cleaner or laundry sorter. The ALJ therefore concluded that Gray was not disabled.

Gray sought review of this decision with the Appeals Council, and on July 10, 2010, the Appeals Council granted the request for review and vacated the hearing decision. On remand, the Appeals Council directed the ALJ to: (1) further evaluate Plaintiff's mental impairments; (2) give further consideration to Plaintiff's maximum RFC with specific references in support of any assessed limitations; and (3) obtain supplemental evidence from a vocational expert to clarify the effect of Gray's limitations on his occupational base.

On May 9, 2011, ALJ Thomas King held a second hearing to consider Gray's disability claim. Gray was once again represented by counsel at this hearing, which included testimony from Gray's girlfriend, Brenda Sneed, as well as vocational expert Robert W. Jackson. At this hearing, Gray abandoned his position that he is disabled due to mental illness and argued that he is disabled as a result of his debilitating back, foot, and lung conditions. On June 30, 2011 the ALJ entered his decision denying Gray's disability claim.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 30, 2006, the alleged onset date of his disability. He further found that Gray suffered from

4

COPD, as well as arthritis of the spine and knee. The ALJ found that these impairments caused more than minimal functional limitations and were thus "severe" under step two of the disability analysis. Nonetheless, at step three of the inquiry, the ALJ determined that Gray did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Based on a consideration of Plaintiff's medical record, the ALJ determined that the Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). However, the ALJ qualified this determination, stating that Plaintiff should (1) avoid concentrated exposure to dust, fumes, and extreme temperatures (hot and cold); (2) work indoors in an environment with climate-controlled air; and (3) be given a sit/stand option at his workstation. In light of his RFC assessment, the ALJ determined that Gray could not return to his position as a crane operator and therefore could not return to any past relevant work. The ALJ nonetheless found, based on testimony by the vocational expert, that Plaintiff could perform sedentary work as a general production worker or material handler. On December 17, 2012, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision under 42 U.S.C. § 405(g). Plaintiff filed this suit on February 5, 2013, seeking review of the Commissioner's decision.

## B. The Summary Judgment Motions

In his September 2013 summary judgment filings, Plaintiff contends the ALJ erred for three reasons. First, Plaintiff contends the ALJ erred in failing to give controlling weight to the opinions of Dr. Amstutz and Dr. Blanks, Plaintiff's alleged treating physicians. Second, Plaintiff argues that the ALJ erred in its analysis of Plaintiff's credibility, either by assigning improper

5

weight to Plaintiff's two previous felony convictions or by failing to provide specific reasons for his credibility determinations. Finally, Plaintiff argues that the ALJ erred in failing to consider and weigh the administrative hearing testimony of Plaintiff's mother, Carol Gray, and girlfriend, Brenda Sneed, in his decision.

In response, Defendant argues that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Defendant states the ALJ reasonably determined the opinions of Dr. Amstutz and Dr. Blank were not entitled to any significant weight because they were not well-supported by objective findings and were inconsistent with the record as a whole. Second, Defendant argues that the ALJ did not assign improper weight to Plaintiff's felony convictions in making his credibility assessment, asserting that the ALJ reasonably considered Plaintiff's felony convictions along with the record as a whole in determining that Plaintiff lacks credibility. Finally, Defendant argues that the ALJ had no obligation to specifically mention the opinions of Plaintiff's mother or Plaintiff's girlfriend in his analysis on the grounds that their testimony served as cumulative lay testimony.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment and granting the Commissioner's motion. In his R&R, the Magistrate Judge addressed two issues raised by Plaintiff's summary judgment filings: (1) "whether the ALJ properly relied upon the consultative examination of William Humphries when developing his RFC, rather than giving controlling weight to the opinions of treating physicians Eugene Amstutz and Virginia Blanks"; and (2) whether the ALJ "erred by failing to provide specific reasons to support his credibility analysis, and by failing to consider and weigh the administrative hearing testimony of

6

Gray's mother and girlfriend in his decision." The Magistrate Judge found the ALJ had considered all of Plaintiff's relevant medical evidence in accordance with the regulations and determined the appropriate weight to give each medical opinion. The Magistrate Judge also found the ALJ properly assessed the credibility of Plaintiff's testimony by considering the entire record and providing sufficient support for his analysis. Finally, the Magistrate Judge found it unnecessary for the ALJ to specifically reference the lay testimony of Carla Gray and Brenda Sneed on the grounds that their testimony merely repeated Plaintiff's discredited allegations and was inconsistent with other evidence in Plaintiff's medical record.

Plaintiff timely filed Objections to the R&R on August 22, 2014, arguing Magistrate Judge Ballou erred in finding substantial evidence supports the ALJ's decision to give no significant weight to the opinions of treating physicians Dr. Amstutz and Dr. Blanks. Plaintiff also claims that the Magistrate Judge erroneously found the ALJ did not solely reject Plaintiff's credibility on the basis of his previous felony convictions. Finally, Plaintiff argues the Magistrate Judge erroneously concluded the ALJ was not required to acknowledge and consider the testimony of Plaintiff's mother and girlfriend in his decision.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). The issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

### III. DISCUSSION

#### A. The ALJ's Consideration of Dr. Amstutz and Dr. Blanks

Plaintiff contends the Magistrate Judge erred by (1) "finding substantial evidence supports the ALJ's decision to give no weight to the opinions of treating physicians Dr. Amstutz and Dr. Blanks"; (2) "finding [P]laintiff's treatment notes at Village Family Physicians do not support the limitations set forth by Dr. Amstutz and Dr. Blanks"; (3) "finding there is no support

in the record for the opinions of Dr. Amstutz and Dr. Blanks that [P]laintiff's pain would constantly interfere with his attention and concentration"; and (4) "[finding] that Dr. William Humphries' opinions from 2007 were still accurate and relevant as of 2011."

An ALJ must give controlling weight to the medical opinions of a treating physician, so long as they are supported by medically acceptable clinical and laboratory diagnostic techniques, and so long as they are not inconsistent with other substantial evidence in the case record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 416.927). Where a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must provide specific reasons for the weight given to that physician's medical opinion, supported by evidence in the case record. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

At the outset, I note that it is unclear whether either Dr. Blanks or Dr. Amstutz qualifies as Plaintiff's "treating physician," thus raising a question as to whether their opinions were ever entitled to controlling weight. The regulations define "treating source" as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation *and who has, or has had, an ongoing treatment relationship with you*." 20 C.F.R. § 404.1502 (emphasis added). Dr. Blanks personally evaluated Plaintiff on only one occasion and there is no indication in the record that Dr. Amstutz ever did so. Such infrequent interaction does not support the idea that Plaintiff had an ongoing relationship with either Dr. Blanks or Dr. Amstutz. *See Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 506 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single

9

visit does not constitute an ongoing treatment relationship.") (internal citation omitted). It is therefore unclear whether either doctor qualifies as a "treating source." 20 C.F.R. § 404.1502.

Even assuming Dr. Blanks and Dr. Amstutz qualify as Plaintiff's treating physicians, the ALJ's decision to give their opinions less than controlling weight is supported by substantial evidence. In determining whether to give a treating physician's opinion controlling weight, the ALJ must consider whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, and the opinion's consistency with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ considered these factors and determined the physicians' opinions were not entitled to any significant weight in part because of the infrequency with which they evaluated Plaintiff's condition. R. at 20 ("As best I can determine from the file, the claimaint was seen on four occasions between the spring of 2008 and the spring of 2011."). Because the ALJ gave specific reasons for assigning less weight to their opinions and the record supports this finding, the Magistrate Judge did not err in finding substantial evidence supports the ALJ's decision to give less than controlling weight to the opinions of Dr. Amstutz and Dr. Blanks. *See Wireman v. Barnhart*, No. 2:05-cv-00046, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) ("[A]n ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings.").

In Plaintiff's second and third objections, he argues the Magistrate Judge erred by finding substantial evidence supports the ALJ's decision to assign no weight to the RFC questionnaires filled out by Dr. Amstutz and Dr. Blanks. Dr. Amstutz filled out a RFC questionnaire in October

of 2008 and Dr. Blanks did the same in May of 2011. Both questionnaires indicate severe limitations in Plaintiff's range of movement and that his pain would "constantly interfere with his attention and concentration" in a work environment.

This directly conflicts with other treatment notes in Plaintiff's medical record. In March of 2008, Plaintiff met with Dr. Delhi of Family Village Physicians. In his report, Dr. Delhi made relatively benign findings with respect to Plaintiff's condition. Specifically, he noted:

> Negative SLR. Decreased dorsiflexion against resistance. Plantar flexion seems to be intact . . . DTR's are 2+ symmetrical at knees and ankles. Rotation movements of the knees and hips seems to be relatively benign. Palpitation over the back seems to be slightly tender through the lumbosacral area but not exquisitely. SI areas seem to be the primary focus. Rotation movements exacerbate pain a little. Good ROM of the shoulders and neck . . . At one point he was told he might need to have some corrective surgery on his low back but he has never felt that was a worthwhile option.

R. at 379. A year later, in June of 2009, Dr. Delhi personally evaluated Plaintiff and again made relatively benign findings. Notably, he stated that Plaintiff had no back pain, joint pain, joint stiffness, or joint swelling. Finally, in October 2010, Plaintiff met with Dr. Luckett, a psychologist who performed a mental evaluation of Plaintiff on behalf of Virginia Department of Rehabilitative Services, and noted that Plaintiff "showed no evidence of pain behaviors during [his] evaluation." R. at 428.

If Drs. Amstutz and Blanks' opinions regarding the severity of Plaintiff's condition were well supported, it stands to reason that either Dr. Delhi or Dr. Luckett would have noted some objective signs of pain or discomfort during their evaluations. Their findings, however, were relatively benign, and the ALJ noted this inconsistency in his decision. Because the judgments reflected in the RFC questionnaires were contradicted by other evidence in Plaintiff's medical

11

record, Magistrate Judge Ballou did not err in finding substantial evidence supports the ALJ's decision to give less than controlling weight to those opinions. *See Craig*, 76 F.3d at 590.

Finally, Plaintiff contends that Judge Ballou "erroneously found that Dr. William Humphries' opinions from 2007 were still accurate and relevant as of 2011." Pl.'s Objections 3. The regulations specifically provide that the ALJ is allowed to give greater weight to medical opinions that are based on laboratory findings. 20 C.F.R. § 404.1527(3) ("The more a medical source presents relevant evidence to support an opinion, *particularly medical signs and laboratory findings*, the more weight we will give that opinion.") (emphasis added). In 2007, Dr. Humphries performed an X-ray of Plaintiff's spine which showed that it was "essentially normal." R. at 309. This is the only medical opinion in Plaintiff's record that is supported by an X-ray evaluation. Even assuming the ALJ gave greater weight to Dr. Humphries' opinion, it was appropriate for him to do so in light of his laboratory findings. Accordingly, Magistrate Judge Ballou appropriately found substantial evidence supports the ALJ's findings with respect to the weight assigned to the medical evaluations in Plaintiff's record.

### B. The ALJ's Credibility Assessment

Plaintiff argues Magistrate Judge Ballou erred in concluding substantial evidence supports the ALJ's determination regarding Plaintiff's credibility. Specifically, Plaintiff contends "[t]he Court erroneously found that the ALJ did not solely reject [P]laintiff's credibility on the basis of [his] prior felony convictions." Pl.'s Objections 4. Plaintiff also argues "[t]he Court . . . erroneously found that [P]laintiff's ability to hunt and fish was in contrast to his claim that he was disabled from all substantial gainful activity." *Id.*

12

Case 6:13-cv-00014-NKM-RSB   Document 22   Filed 09/17/14   Page 12 of 16   Pageid#: 642

It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig*, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.* In analyzing whether a Plaintiff is disabled, the ALJ must first find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] [his] ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Id.* at *4.

The ALJ made his credibility findings in the context of discussing Plaintiff's alleged mental impairments. During the initial stages of his administrative proceedings, Plaintiff alleged that he is disabled due to anxiety and depression. He alleged that these mental impairments are crippling and effectively prevent him from interacting with others. At the second administrative hearing, Plaintiff abandoned this position. R. at 75 ("But I, I don't, we don't contend that he meets listings on the mental health issues and I don't think we need to go into that."). Nonetheless, in his final decision, the ALJ addressed Plaintiff's argument.

13

After reviewing the opinions of Plaintiff's treating physicians, the ALJ determined his claim failed because his "[mental] condition has not been shown to limit his ability to perform basic work tasks on a regular basis" and thus was not "severe" under step two of the disability inquiry. In the same analysis, the ALJ made findings with respect to Gray's credibility and his subjective complaint that his anxiety limits his ability to interact with others. The ALJ considered Dr. Luckett's psychological evaluation and his conclusion that "claimant probably exaggerated and magnified his performance on the Personality Assessment Inventory." R. at 18. He also considered Plaintiff's two previous felony convictions as well as the fact that Plaintiff regularly engaged in hunting and fishing activities during the same period he alleged he was completely disabled from all gainful employment. Considering this evidence, the ALJ determined that Plaintiff "has little [credibility]" and therefore rejected Plaintiff's contention that his mental impairments prevent him from interacting with others. Contrary to Plaintiff's position, the preceding discussion demonstrates that the ALJ actually considered three distinct pieces of evidence in evaluating Plaintiff's credibility: (1) Dr. Luckett's psychological evaluation; (2) Plaintiff's hunting and fishing activities; and (3) Plaintiff's two previous felony convictions. Accordingly, Plaintiff's objection to the R&R lack merit.

### C. The ALJ's Consideration of Plaintiff's Testifying Witnesses

Finally, Plaintiff objects to the R&R on the grounds that Magistrate Judge Ballou erroneously concluded the ALJ was not required to consider the testimony of his mother and girlfriend in his decision. The "ALJ is not asked with the 'impossible burden of mentioning every piece of evidence' that may be placed into the Administrative Record.'" *Cordell v. Barnhart*, 1:05-CV-281, 2006 WL 5435534, at *3 (W.D.N.C. May 19, 2006) (quoting *Parks v.*

14

*Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)). All that is required is that the ALJ articulate his assessment of the evidence to permit meaningful judicial review, which must include specific reference to the evidence producing his conclusion. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). Notably, the United States Court of Appeals for the Fourth Circuit has held that it is unnecessary to discuss the testimony of lay witnesses where it is inconsistent with other evidence in the record. *See Laws v. Celebrezze*, 368 F.2d 640, 644 (4th Cir. 1966).

Here, the testimony of Plaintiff's mother and girlfriend is inconsistent with other evidence in Plaintiff's administrative record. In the first administrative hearing, Plaintiff's mother stated Plaintiff is unable to sit or stand for long periods of time and has issues being around crowds. In the second hearing, Plaintiff's girlfriend stated Plaintiff has to lie down during the day, cannot bend over, and has difficulty performing simple chores. As has been previously noted in this opinion, these statements are inconsistent with Dr. Delhi's treatment notes and Dr. Luckett's psychological evaluation. Given its inconsistency with the record, the ALJ had no obligation to specifically mention their testimony. *See Laws*, 368 F.2d at 644.

Moreover, Plaintiff has identified no statute or decision in the Fourth Circuit that compels a contrary conclusion. The regulations actually provide that the ALJ "may" consider the testimony of non-medical sources in determining the severity of one's impairments. 20 C.F.R. § 404.1513(d)(4) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we *may* also use evidence from other sources . . . for example, spouses, parents and other caregivers . . . ."). Because the regulations provide the ALJ with discretion in determining whether to rely on lay testimony, it stands to reason that he should not face reversal in the event that he exercises his discretion in choosing not to do so.

15

## IV. CONCLUSION

After undertaking a de novo review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an Order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing this action and striking it from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this  17th   day of September, 2014.

                                                          _____
                                                          NORMAN K. MOON
                                                          UNITED STATES DISTRICT JUDGE